OTIS OIL & GAS CORPORATION, a Colorado Corporation,

Plaintiff and Appellant,

vs.

FRED C. MAIER, JACOB V. SCHAETZEL, MERRILL A. KNIGHT and E. J. SCHAETZEL,

Defendants and Respondents.

(No. 2676; June 3rd, 1955; 284 Pac. (2d) 653)

138

For the plaintiff and appellant the cause was submitted upon the brief of Raymond, Guthrie and Raymond of Newcastle, Wyoming, and Gorsuch, Kirgis, Campbell, Walker and Grover of Denver, Colorado, and oral argument by Fred A. Derring also of Denver and a member of said firm.

For the defendants and respondents the cause was submitted upon the brief of Jones and Dumbrill of Newcastle, Wyoming, and oral argument by Frank M. Gallivan of Cheyenne, Wyoming.

## OPINION

BLUME, Justice.

The action herein is an action for specific performance of an oral contract (evidenced however by writing) for an oil and gas lease entered into between plaintiff and appellant Otis Oil and Gas Corporation on the one hand and Fred C. Maier on the other. The petition alleges in substance the following facts:

The defendant Fred C. Maier has an interest in the oil and gas underlying lots 2, 3 and 4 of section 5 in Tp. 43 N., R. 64 W., 6th P.M. and the S½ of the SE¼, the NW¼ of the SE¼ and the S½ of the SE¼ of section 32 in Tp. 44 N., R. 64 W., 6th P. M., and that plaintiff has an interest in the oil and gas in sections 4, 5 and 9 in Tp. 43 N., R. 64 W., 6th P.M. (some of which was adjacent to Maier's land). Maier leased his land or subleased his interest to one E. R. McElroy, the latter undertaking to drill the land diligently for oil and gas, and while he had one producing well, he failed to do anything more, making his lease subject to forfeiture. Thereupon plaintiff and defendant entered into an agreement for a lease on Maier's land. "The negotiations by and between the Plaintiff and Defendants, * * * proceeded to a complete agreement as evidenced by Exhibit 'A' hereto attached." Repeated representations were made to plaintiff that the agreement as evidenced by Exhibit A was the agreement of the parties and was in full force and effect, although not executed in writing. Based on these representations plaintiff incurred expenses and commenced drilling an offset well on its own property. On October 2, 1953, plaintiff wrote a letter to Maier, embodying in writing what is claimed to have been the oral contract, asking

Maier to sign it, but he failed to do so. The letter stated that unless it was signed on or before November 20, 1953, the contract would be of no force and effect and that plaintiff would not be bound thereby| When, however, Maier failed to sign the letter (embodying, as stated, the so-called oral contract in writing), plaintiff changed its mind, insisted that it be signed, and when this was not done, this action followed. The petition also alleged that defendants other than Maier claimed an interest in the oil and gas underlying the land of Maier. Plaintiff prayed that defendant Maier be required to sign and execute the formal agreement, and be required to comply with all the provisions thereof; that the rights of the other defendants be subordinated to the rights of the plaintiff, "and for such other and further relief as the court may deem just."

Exhibit A attached to the petition provides, so far as the provisions are necessary to be set out herein,. as follows:

"1. Within five days from the date of your execution of this letter agreement, you will execute, acknowledge and deliver to us an oil and gas lease covering your entire mineral ownership in the above-described lands * * *.

"3. Immediately upon our request, after delivery by you of the lease provided for in paragraph numbered 1 above, you will send written notice, by registered mail, to the above-mentioned E. R. McElroy * * * * declaring forfeiture of his presently claimed lease-hold interest which notice shall be in such form as may be designated or requested by our attorneys but with the consent or approval of your attorneys. Promptly upon expiration of such period of time as may be stated in the above-mentioned notice to E. R. McElroy and his assigns, we shall, through our attorneys, cause to be filed in the appropriate court of the State of Wyoming a complaint against said E. R. McElroy and his assignees of record to secure a judicial determination of the termination of all their rights, title and interest, whether under the above-described lease to said E. R.

McElroy or otherwise, in and to all the above-described lands * * *. After the filing of said complaint we shall prosecute said litigation with due diligence to completion, * * *.

"4. * * * Immediately upon successful conclusion of the litigation mentioned in paragraph numbered 3 hereof, in the event that it is successfully concluded, you and we will immediately act together in an effort to secure issuance by said Bureau of Land Management of a 'future interest' lease covering the land subject to this agreement either pursuant to the application already filed by you or pursuant to such new application as may then be required.

"5. In the event that the litigation mentioned in paragraph numbered 3 hereof is successfully concluded against said E. R. McElroy and his assigns of record, and is so concluded in circumstances where pursuant to the terms of this agreement we (appellants) are entitled to retain and record the oil and gas lease provided for in paragraph numbered 1 hereof we shall, on or before the expiration of sixty days from the entry of final judgment against E. R. McElroy and his assignees of record, or within sixty days after issuance by the United States Bureau of Land Management of a 'future interest' lease as contemplated in the preceding paragraph of this agreement, which ever is the later, but in no event later than one year from the date of the entry of final judgment as above provided, commence operations for the drilling of a well for oil and gas at a location to be selected by us on the lands subject to the lease provided for in section numbered 1 hereof, and shall thereafter continue the drilling of such well with due diligence to a depth adequate thoroughly to test the Newcastle Sand, failing in which this agreement shall be of no further force and effect whatsoever and we shall immediately upon demand release to you (Maier) the oil and gas lease provided for in section numbered 1 above."

Paragraph numbered 6 provides for further drilling by appellant in case a producing well is drilled pursuant to paragraph numbered 5.

The defendants are nonresidents of this state, and

they were served on January 28, 1954, by constructive service in the state of Colorado. The defendants appeared in the action specially on February 26, 1954, and moved that the pretended service of summons and complaint be vacated and set aside for the reason that the court has no jurisdiction over the persons of the defendants in this action which is one in personam requiring personal service upon the defendants and each of them. This motion was taken under advisement and sustained by the trial court on May 20, 1954. From the order of the court the plaintiff, hereinafter called the appellant, has appealed to this court.

The question herein is one of jurisdiction in view of the fact that the defendants herein were not served personally in the state, but in Colorado. The action herein is one for specific performance. A suit of that kind is essentially one in personam, not in rem, and in the absence of a statute conferring upon equity courts jurisdiction in rem to enable them to enforce their decree without the necessity of having to reach the person of the defendant, such suits are still generally regarded as suits in personam, jurisdiction of which may not be predicated on constructive service of process. 42 Am. Jur. § 87, p. 75; Annotation, 126 A.L.R. 667. However, courts have inherent jurisdiction over all property within the bounds of the state, and the legislature may give them power to deal with it though only constructive service has been had on the parties interested. 42 Am. Jur. 76. Counsel for appellant say that such power has been conferred by Sections 3-804 and 3-1101, Wyoming Compiled Statutes, 1945, when the action is one for specific performance of a sale of real estate. They claim that this is such an action. That is doubtful. State v. District Court of Ninth Judicial Dist., 44 N.M. 16, 96 P. 2d 710, 718, 719; 126 A.L.R. 651. It is action in the main to enforce a contract for a lease which contains a number of reciprocal stipulations. However, § 3-1101,

W.C.S. 1945, provides for constructive service "In actions which relate to, or the subject of which is real or personal property in this state, when a Defendant has * * * actual or contingent interest therein *    * *."

No case has been cited and there is apparently none on record holding that specific performance—ordinarily acting in personam, as stated—of a contract for a lease may be granted under these provisions. But on account of the difficulty of the question, we prefer not to decide it at this time, and shall, for the purposes of this case and those only, concede that courts in this state may obtain jurisdiction in an action such as is before us, if it is one purely in rem or quasi in rem. See Annotation, 126 A.L.R. 664. While the action herein appears, in part at least, to sound as an action in rem or quasi in rem, we must go further and inquire whether it is an action of that kind to such an extent and of such a nature that the court ought to, or can, enforce it in view of the terms and conditions of the contract herein. We shall consider the case under several headings, and in that connection shall refer to some general principles which counsel for appellant seem to have overlooked or which they do not consider of importance. We shall omit consideration of whether or not part-performance has been sufficiently pleaded so as to take the case out of the statute of frauds; nor shall we consider the effect of the statement in the letter of appellant, dated October 2, 1953, stating that if Maier failed to sign it on or before November 20, 1953, appellant would not be bound by the contract and that it should be of no force or effect. These points, while doubtless deserving careful scrutiny, have not been presented in such a way that we feel we should decide them.

1.    (a) A decree for specific performance of a contract is not a matter of absolute right. It is a matter of discretion. See Annotation, 65 A.L.R. 26; 81 C.J.S.

417. The discretion is not one that is abritrary. It means that the court takes into consideration the conduct of the plaintiff and all the circumstances of the case, and the mere fact that a valid contract exists is not conclusive in the plaintiff's favor. McLaughlin v. Leonhardt, 113 Md. 261, 77 A. 647.

(b) The court will not make a contract for the parties. The contract made by them must, generally, be enforced, if enforced at all, according to its terms. 81 C.J.S. 756. In this case, the court would have no authority to grant the lease asked by appellant except subject to the terms and conditions contained in the contract, and the obligations resting upon the parties; neither could the court enlarge these obligations. Thus, it is said in 49 Am. Jur. § 171, p. 194: "In rendering a decree of specific performance, the court has no power to decree performance in any other manner than according to the agreement of the parties. The court should not assume to make a new contract for the parties and then decree its specific performance, or undertake to compel the defendant to do something he did not contract or agree to do, but should enforce the contract in question according to its terms or not at all."

2. It is said in 42 Am. Jur. 76: "Some statutes providing for constructive service upon nonresidents in cases affecting property within the state expressly include suits for specific performance of contracts to sell land   *   *   *, provided the relief prayed for does not involve, in addition to conveyance of the land, *elements of liability which may be asserted only against the person of the defendant,* and which consequently would necessitate the rendition of a decree in personam." (Italics supplied.) Again in 42 Am. Jur. 77, it is said: "The courts are unanimously agreed that even under statutes providing, directly or by construction,

that jurisdiction of a suit for specific performance of an agreement to convey land may be conferred by constructive service upon nonresident owners, and a fortiori in the absence of statute, the relief sought or the decree rendered *may not embrace elements of liability enforceable only against the persons of the defendants,* and that where such is the nature of the relief sought, or the decree rendered, personal service within the jurisdiction of the court may not be dispensed with." (Italics supplied.) Again on the same page it is stated: "Under the rule that specific performance may not be decreed upon constructive service on a nonresident defendant where the relief prayed for includes elements of liability personal to the defendant, a suit to compel a vendee to specifically perform a land contract may not be maintained against a nonresident purchaser, without personal service upon him within the territorial jurisdiction of the court." In 50 C.J.S. § 908, p. 550 and 34 C.J. 1172, the rule is laid down that: "Where the proceeding is not strictly and purely in rem, no valid judgment can be rendered against the rights of third persons unless they are served with process or appear and have an opportunity to be heard." So it is said in Berson v. Scott, 94 N.Y.S. 2d 117, citing Jackson v. Jackson, 290 N.Y. 512, 515, 49 N.E. 2d 988, 990, 147 A.L.R. 668, that no court may award a judgment that runs wholly or in part in personam against a nonresident not personally served within the court's jurisdiction and not voluntarily appearing. In Adams v. Hecksher, 83 Fed. 281, 282, 283, the court stated: "But, to give the court jurisdiction so to proceed, the 'immediate object' of the suit must be the enforcement of the right to the real estate. It must be for that, and that alone.    *    *    * And as the plaintiffs do not ask for a decree passing the title to the land, except upon such precedent conditions, this court cannot reach that point in its decree until it has afforded the other relief asked for by the

plaintiffs, which relief must operate upon the person of the defendant." See also Annotation, 93 A.L.R. 630, subdivision IV, and cases cited. In the case at bar the appellant asked not alone a lease, but also the enforcement of the terms and conditions which are elements of liability which can be enforced only by a decree in personam. Nor did the appellant indicate by the petition that it would be willing to dispense with the enforcement of such elements of liability in personam (if it could legally have done so, which we do not decide), so that without such waiver these elements of liability may well be regarded as conditions of the performance of its obligations under the contract.

We find, accordingly, an elementary rule that a court cannot, when only constructive service on a nonresident is had, enforce covenants personal in their nature, that is to say, elements of liability enforceable only by a decree in personam. There are several of such covenants contained in the contract before us. One is that the defendant Maier be required to sign the lease asked. We may disregard that. Place of that may possibly be taken by the provisions of § 3-3509, W.C.S. 1945, which in brief provides that when a party fails to comply with a judgment for conveyance, the judgment itself shall operate to the same effect, (assuming, but not deciding, that enforcement of the contract herein can be considered a "conveyance"). But there are other covenants not embraced in the statute. One of these is contained in section 3 of the contract to the effect that the defendant Maier shall send a written notice by registered mail to McElroy declaring forfeiture of his presently claimed leasehold. Another is contained in section 4 of the contract to the effect that defendant Maier will cooperate in an effort to secure issuance by the Bureau of Land Management of a future interest lease. Another is impliedly contained in section 3 to the effect that defendant Maier will permit his name to be used

in a suit against McElroy. Appellant in his prayer asked all of these covenants to be enforced. These covenants of Maier are not enforceable in this action in which only constructive service has been had on nonresident defendants. If a court should, nevertheless, undertake to give appellant a lease for which it asks, ignoring the covenants of Maier, it would thereby exert pressure on defendant Maier to sign the lease and comply with his covenants, in order to be certain that he could compel the appellant to perform its obligations. But the court has no power to do by indirection what it is prohibited from doing directly, particularly is that true in an action for specific performance in which a decree is given as a matter of grace and discretion.

3. The court has no power to grant the lease asked (aside from the payment of 15% royalty to Maier) except subject to two main conditions and obligations on the part of the appellant, namely: First, the obligation to commence and prosecute a suit to invalidate the lease of McElroy, as stated in section 3 of the contract. Second, to diligently drill oil and gas wells, as stated in sections 5 and 6 of the contract, and this obligation is doubtless the most fundamental of all in order that any of the parties might get any benefit from the contract. But these obligations are, under the terms of the contract, dependent and hence substantially conditional upon the fulfillment of the unenforceable covenants of Maier, and, as already stated, the court has no power to enlarge or broaden the appellant's obligations. Yet it is quite clear that the court had no power to award appellant a lease as a gratuity. Maier would be entitled to something in return. Hence it is apparent that the court, if it were to grant a lease at all, would be compelled to make the obligations of appellant compulsory, even though it could not enforce the obligations above mentioned of Maier. But, as already stated, the court had no power to enlarge the obligations of appellant—

at least not without its consent—beyond what is stated in the contract, and make its obligations compulsory when they are dependent as above stated. Thus the court is frustrated on every hand. It may be—without deciding the point—that if appellant in its petition had waived the performance of the covenants of Maier, so as to give the trial court an opportunity to decide the case in that light (and assumisg that such waiver would not be detrimental to the defendants), and if the appellant had offered to perform its obligations without reference to such covenants of Maier, and it would further have appeared that its obligations would be enforceable under these circumstances, then the lease might perhaps have been legally granted. See 49 Am. Jur. 94; Jasper v. Wilson, 14 N.M. 482, 94 P. 951, 23 L.R.A. NS 982; 81 C.J.S. § 21, p. 446. But those are not the facts in the case. Appellant waived nothing; it asked that all the promises of Maier should be performed. In short all the terms and conditions of the contract were considered interdependent and, as already heretofore stated, the contract, if enforceable or enforced at all, must be enforced with all the dependent terms, conditions and obligations attached thereto, and since that cannot be done in this case the whole contract falls by the wayside. As succinctly stated in Beal v. United Properties Co., 46 Cal. App. 287, 189 P. 346, 349: "The court cannot decree that that portion only of such contract which is favorable to plaintiff may be enforced. Unless the contract as a whole, or at least its pertinent features, can be enforced, plaintiff is not entitled to specific performance."

It follows that the judgment of the trial court must be affirmed, and it is so ordered.

*Affirmed.*

RINER, C. J., and HARNSBERGER, J., concur.