RANDALL BRATEN and VIOLA BRATEN, Husband and Wife,

*Plaintiffs and Appellants*

vs.

HELEN R. BAKER,

*Defendant and Respondent.*

(No. 2806; April 8th, 1958; 323 Pac. (2d) 929)

274

For the plaintiffs and appellants, the cause was submitted upon the brief of Goppert & Fitzstephens, and oral argument by Mr. E. J. Goppert, of Cody, Wyoming.

For the defendant and respondent, the cause was submitted upon the brief and oral argument of Mr. Meyer Rankin, of Cody, Wyoming.

Heard before Blume, C. J. and Harnsberger and Parker, JJ.

## OPINION

Mr. Justice HARNSBERGER delivered the opinion of this court.

Plaintiffs sought specific performance following their election to exercise a purchase option contained in a written lease of real estate dated February 11, 1950. The court denied plaintiffs relief and quieted defendant's title to the property. Plaintiffs appeal.

It appears defendant owned lands which she leased to plaintiffs for a five-year period beginning the first day of March, 1950, and continuing during and until the first day of March, 1955. The lease instrument was partly printed and partly typewritten. It provided share rental for the leased term, restricted assignment of the lease without consent of the lessor in writing and in typewritten clauses gave plaintiffs a purchase option as follows:

"Party of the second part shall have the option of purchasing said real property at the end of five years for the sum of $6,000.00. Interest included. Payment to be made at the rate of $500.00 on March 1, 1955, and a like amount on the first day of March on each year thereafter until the full amount is paid.

\* \*　　　　\* \*　　　　\* \*

"It is further agreed by the parties hereto that this agreement shall be binding upon the heirs, assigns, executors or administrators of the parties hereto. In the event Party of the Second Part exercises (sic) the Option to purchase under this agreement, Party of the First Part hereby releases any and all rights under the Homestead Exemption Law of the State of Wyoming."

The lease remained in full force and effect with plaintiffs in possession of the property until the expiration of the lease term provided, although at one time defendant notified plaintiffs she elected to cancel and terminate the lease because of plaintiffs' alleged failure to fulfill their obligations under the lease. But defendant took no further steps to effect its cancella-

tion, and she permitted the lease to endure and the plaintiffs to remain in possession for its entire period. The mere saying there had been a default was not enough to abrogate the lease. The plaintiffs were entitled to their day in court to have determined if a default had in fact occurred.

On February 2, 1955, plaintiffs notified defendant in writing that they desired to exercise their option to purchase the land and tendered a cashier's check for $500 as the original payment upon the purchase price in accordance with the terms of the option. The defendant, through her attorney, returned the check to plaintiffs, again advising them that the lease and option had been terminated.

It also appears that plaintiffs entered into a contract with a third person, bearing date the fourteenth of October, 1954, which set forth that plaintiffs

" * * * do hereby sell, assign, set over and transfer unto the Purchaser herein [the third party], all rights to purchase the said property given by the said Farm Lease and Option to Purchase Agreement and, in particular, all rights to exercise said option agreement for the purchase of said property in the names of the Owners herein; and said Owners agree to sell and convey said property to the Purchaser for said consideration." The contract also provided:

" * * * the Owners shall remain in possession of said property and premises until their lease thereon expires and shall give possession thereof to the Purchaser on the 2nd of March, 1955. * * * "

The defendant contended this contract was an assignment prohibited under the terms of the lease and option agreement, inasmuch as it was not consented to in writing by the defendant and, therefore, was a vio-

lation of the lease and option agreement which forfeited plaintiffs' right to exercise the purchase option.

The trial court found the parties entered into the written farm lease and option to purchase agreement; that plaintiffs entered into possession, paid the required rental and were not in default on any rental payments; that on the second day of February, 1955, plaintiffs tendered and offered to pay defendant the first payment of $500 under the option agreement for the purchase of the property and offered to assume all obligations under the option, but that such tender and payment and offer was refused by defendant; that thereafter on February 2, 1955, plaintiffs again tendered the sum of $500 in the form of a cashier's check and, in writing, agreed to make all payments required to be paid under the terms and provisions of the option agreement; that the written acceptance and cashier's check for $500 were on that date sent by registered United States mail by plaintiffs to defendant, and that defendant thereafter received and returned the same to plaintiffs under date of February 10, 1955; that defendant on October 23, 1954, sent plaintiffs a notice of default, claiming plaintiffs' failure to account to defendant for her share of the rentals, and notified plaintiffs she would not consent to any assignment of the lease or so-called option; that plaintiffs contended they had fully paid and accounted for the rentals and continued in possession and denied having defaulted under the terms of the lease and option agreement; that on February 2, 1955, after defendant had refused plaintiffs' tender for payment and settlement of rentals and of the $500 required to be paid on March 1, 1955, under the terms of the option agreement, plaintiffs entered into an agreement with the third party to sell and convey him the property; that the negotiations leading up to that agreement between plaintiffs and

the third person had commenced about October 14, 1954, and were consummated and finally signed and agreed to on February 2, 1955, and that the said assignment so made by plaintiffs to the third party was not consented to by defendant.

Following these findings, the court stated its conclusions as follows:

(a) That said agreement between plaintiffs and defendant was not an option agreement.

(b) And that the purported assignment thereof by plaintiffs to the third person was contrary to the proviso contained in the lease and option agreement and that by the making thereof, the plaintiffs' right to purchase the property under the terms thereof terminated.

It seems so well settled that a purchase option contained in a lease is supported by consideration that elaboration should be unnecessary. See James, Law of Option Contracts, 1916 ed., § 101, p. 2; § 321, p. 135; 51 C.J.S. Landlord and Tenant § 81, p. 636; Bacon v. Kentucky Cent. Ry. Co., 95 Ky. 373, 379, 380, 16 Ky. Law Rep. 77, 80; 25 S.W. 747, 749; McCormick v. Stephany, 57 N.J.Eq. 257, 262, 41 A. 840, 842, 61 N.J. Eq. 208, 48 A. 25; Frank v. Stratford-Handcock, 13 Wyo. 37, 54, 55, 77 P. 134, 137; 32 Am.Jur., Landlord and Tenant, § 299, pp. 278, 279; 5 Williston, Contracts, Rev. ed. 1936, § 1441, p. 4026.

The essential of a valid option to purchase is the same as that of any other type of contract, notwithstanding it remains unilateral as an offer to sell until, within the time limited, there is an election by the optionee to purchase, when it then becomes bilateral and binding upon both parties. It differs from a mere offer to sell in that such an offer may be withdrawn at

any time before its acceptance, even though a time has been fixed within which the offer may be accepted and even though it has been expressly stipulated that it may not be withdrawn within that time. On the other hand, an option being supported by consideration the optionor may not withdraw or revoke the offer during its time limit. For the period fixed by the option, the optionor has parted with the right to sell to any other person and is committed to make sale to the optionee at his election. See generally James, Law of Option Contracts, 1916 ed., § 201, p. 66, § 703, pp. 263, 264; 51 C.J.S. Landlord and Tenant §§ 81, 82, pp. 634-640; 91 C.J.S. Vendor & Purchaser § 4, p. 832; 2 Thompson on Real Property, 1924 ed., § 1291, pp. 387, 388.

We do not know what the learned trial court had in mind when it concluded the agreement was not an option. Perhaps it considered that the absence of provision for making conveyance was fatal to the option. However, we do not think that made any difference. Where there is no provision for conveyance it follows as a matter of course that the conveyance must await the completion of the specified purchase price. There is nothing uncertain, indefinite or incomplete in the provisions granting plaintiffs the option to purchase. These provisions expressly and exactly state the time for the exercise of the option; the total purchase price to be paid inclusive of the interest; the amount and time for making of installment payments to complete payment of the purchase price; that the agreement was binding upon the heirs, assigns, etc. of the owner and they contain her release of homestead rights. All that was necessary to transform that option from an unambiguous and certain offer to sell within the time limited was the acceptance of the offer by plaintiffs' election within that time to exercise the option to purchase, whereupon it immediately became a firm contract of

purchase and sale. This is clearly set forth in 91 C.J. S. Vendor & Purchaser § 13, p. 864, as follows:

"More precisely, acceptance, within the time specified, of an option to purchase land and compliance with the conditions, if any, change the option into a contract of sale binding on both parties, governed by the laws applicable to contracts for the purchase and sale of property; and this is true of acceptance of an option to sell. *Acceptance converts the option into a binding contract even if made before the time for acceptance has expired.* * * * " (Emphasis supplied.)

And in 51 C.J.S. Landlord and Tenant § 82, p. 641, it is said:

" * * * all that is required is that the lessee notify the lessor, prior to the date of the expiration of the option, of the lessee's decision to exercise the option. * * * " Similarly in 5 Thompson on Real Property, 1924 ed. § 4287i, at page 394, it is stated, with respect to an option:

" * * * It is a continuing offer until the expiration of the time mentioned, and its acceptance by the other party *during the interval* completes the contract and exhausts the option. * * * " (Emphasis supplied.)

We must, therefore, hold the agreement for the option was a valid and subsisting agreement and as stated in the case of Frank v. Stratford-Handcock, 13 Wyo. 37, 55, 77 P. 134, 138:

" * * * Such an agreement — that is, an optional agreement to convey made upon proper consideration, or forming part of a lease or other contract that is in fact the consideration for it — cannot be revoked by the vendor within the period granted for the exercise of the option. * * * "

The court's further finding that plaintiffs' agreement with the third party violated the proviso limiting

the right of assignment and terminated the plaintiffs' right to purchase the property presumably interprets the limiting clause as being applicable to assignment of the option as well as to an assignment of the leasehold, and it also implies the agreement with the third party to be such a prohibited assignment of the option, although that is not completely clear. If, however, the finding refers to a "purported assignment" of the leasehold, even such an attempted assignment without the lessor's written consent would not of itself vitiate the option nor even the lease, but would only serve to leave the "purported" assignee without any enforceable right as against the defendant. We need not determine whether such a purported assignee of an option may exercise it, although it has been so held in many cases. In this litigation it is not the purported assignee who seeks specific performance from the defendant but the optionees themselves. Nor need we decide whether an attempted assignment in violation of a covenant to the contrary will warrant the forfeiture of a lease or of the option or both, although the law seems clear that it will not.

It is said in 51 C.J.S. Landlord and Tenant § 105, p. 684:

" * * * neither intent nor purpose to assign or sublease, however manifest, nor a mere agreement to do so, nor the taking of initial steps therefor will work a forfeiture."

It is also said in 51 C.J.S. Landlord and Tenant § 86, p. 646:

" * * * The mere fact that the lessee has contracted with a third person for the transfer of the property to such third person does not deprive the lessee of his rights under the option. * * * "

The text is supported by Coles v. Denslow, 8 Cir., 270 Fed. 22, where the holders of an option for the purchase of land, which was not assignable without consent of the owner, had contracted without such consent for the resale of the land at a profit. The court said at page 25:

"The optionees had the right to sell the land without telling appellants. It was no concern of theirs. They had agreed to take the amount mentioned in the option, without being induced to do so by any fraud or unfair dealing, and could not complain if the optionees sold the land for a higher price. The object of taking these options in most cases is to sell the land again at a profit. The optionees did not know what they could get for the land when they received the option, and the matter all rested in uncertainty and speculation until the contract with Denslow was made. * * * "

In Leegar Realty Corporation v. Electromatic Mfg. Corporation, 272 App.Div. 1069, 74 N.Y.S.2d 766, it was held that upon receipt of a tenant's notice of election to exercise option to purchase as granted by the lease, the landlord was bound to convey in compliance with the option agreement, and tenant thereafter could assign its rights under the option agreement without landlord's consent.

Let us test the correctness of these holdings. Suppose there were no negotiations between the third party and plaintiffs prior to the first day of March, 1955. In that event, it is very clear that plaintiffs would have had a right to exercise the option upon payment of $500 to defendant and thereafter to have consummated the purchase in accordance with the specified terms. Suppose also that even on the very next day plaintiffs entered into a contract for the sale of the property to a third person. In such a case, could it be said defendant would have the right to cancel the con-

tract of sale? It is clear defendant would have no such right.

The situation in this case, where the commitment to sell to the third party was made but a short time prior to completion of the lease period, does not make the situation essentially different. This is especially true because the contract to sell to the third party express- ly provided for its deferment until after the expira- tion of the leasehold. The difference is too insignifi- cant to be taken into account by the law.

A case which goes even further than is necessary for us to go here is Forest Hill Masonic Guild, Inc. v. Boulevard Bank, 78 N.Y.S.2d 352. There the tenant, under a lease which contained an option to purchase, subsequently sold its business including the lease to a third party and the landlord refused to consent to the proposed assignment of the lease. Thereupon the ten- ant elected to exercise its option to purchase the prem- ises. The court held the tenant was entitled to spe- cific performance of the purchase contract. In that case the lease contained covenants against assignment without the landlord's written prior consent. The les- see had agreed with the third party that if the land- lord refused to consent to assignment of the lease the lessee would exercise its option to purchase and would then convey to the third party. When the consent to assignment was refused, the lessee elected to exercise its option to purchase, and the court decreed specific performance against the owner and lessor. This was a plain case where the option to purchase was exer- cised for the express purpose of circumventing the landlord's refusal to consent to the assignment of the lease, yet the binding force of the option agreement was upheld.

Counsel for defendant argues that the option could not be exercised before March 1, 1955, and that its premature exercise on February 2, 1955, was void and of no effect. We may concede plaintiffs were without right to terminate their lease tenancy prior to March 1, 1955, or to substitute their assignee for themselves as defendant's tenant. We may also agree that plaintiffs' relationship with defendant as landlord and tenant continued until March 1, 1955. But there is no indication in this case that the plaintiffs intended to, or did in fact, sever or disturb that relationship prior to the date of expiration of the lease on March 1, 1955. Plaintiffs simply gave notice of their *election* to exercise the option contained in the agreement of February 11, 1950. That agreement provided for the *exercise* of the option as of March 1, 1955.

It should be borne in mind that there is a difference between the making of an election under a granted option and the exercise of that option. *Election* refers to the acceptance of the optionor's offer of sale and transforms the option into a binding contract of purchase. The *exercise* of that purchase occurs only at the time and in the manner and upon the terms specified in the option agreement and the completion or consummation of that exercise may be continued over whatever period of time it takes to complete the purchase in accordance with the terms of the option.

After giving the notice of their *election*, the plaintiffs continued to remain in possession of the property as tenants of the defendant until the expiration of the lease which occurred on the first day of March, 1955. In giving notice that they elected to exercise the option, plaintiffs plainly indicated by express reference to the lease and option agreement that it was their intention that the option was to be exercised and to come into

force and effect at the end of the five-year period as was provided in that agreement, and not before.

The contract with the third party, although received in evidence, was irrelevant to any proper issue in the case. This is so because by its own terms the third party was not given any right of possession or any other right which could affect the leasehold. The only right affecting possession or use to which the third party became entitled did not attach until March 2, 1955, a date subsequent to the termination of the leasehold and at a time when plaintiffs' status as lessees had been changed to that of purchasers, possessed of all rights incident to that capacity.

We may dispose of this appeal by confining ourselves to the inquiry whether an assignment to the third party was actually made. It is true that the contract between plaintiffs and that party speaks of an "assignment" of the option, but it also provides the " * * * Owners agree to sell and convey said property to the Purchaser for said consideration." Furthermore, the election to exercise the option was, in fact, made by plaintiffs *before* this contract with the third party went into effect. Under these circumstances what the court possibly considered as an assignment of option was wholly ineffectual for that purpose and consequently was without bearing upon any issue in this case. The only effectual thing in the contract with the third party was the clause where the " * * * Owners agree to sell and convey said property to the Purchaser for said consideration", and that covenant is of no importance here.

Aside from what has been said, we see no reason for holding that the notice of election to exercise the option, although given on February 2, 1955, some twen-

ty-six days before the end of the five-year lease term, did not serve as a valid election to exercise the option at the end of five years as provided in the lease. The giving of notice of such election within less than a month preceding the date of the lease's expiration was proper in order to signify the plaintiffs' purpose to exercise the option at the end of the five years speci- fied in the instrument. The word "at" as used in the phrase "at the end of five years" does not necessarily mean just a few moments before or at the exact instant of the specified date, but should be construed as meaning reasonable "nearness in time" to the expiration indicated. See 4 Words and Phrases, Perm. ed., p. 652. Without intending to indicate our entire agreement, we call attention to the holding in LaDow v. E. Bement & Sons, 119 Mich. 685, 79 N.W. 1048, 45 L.R. A. 479, where it was held that an option exercisable at the end of two years from May 1, 1895, could be exercisable on May 26, 1897, thus finding the election was made within a reasonable time. Similar in effect is Rogers v. Burr, 97 Ga. 10, 25 S.E. 339. If an option is exercisable within a reasonable time after the date fixed, it certainly should be exercisable within a reasonable time before expiration, particularly when, as in the case at bar, it was clearly stated the exercise would be in accordance with the very agreement which made provision therefor and that the lease should remain in force and effect until its expiration. Needless to say had there been an *independent* cause for forfeiture of the lease arising between February 2 and March 1, an entirely different question might present itself, but no such problem is present in this appeal.

In the view of this matter which we have taken, it is unnecessary to discuss the suggested question of severability of the lease and the option. There was no disturbance of the lease by plaintiffs' election to exercise

their option to purchase. There was no change in plaintiffs' possession and use of the leased premises. The lease continued in full force and effect until its completion by expiration of its term. No right or enjoyment reserved to defendant under the lease was denied, or in any way affected, because the election which was made merely provided for exercise of the right to purchase at the termination of the lease period.

Questions of severability become important when the exercise of rights under one of the contracts will be in derogation of rights under another, or possibly when there are questions as to the applicability of clauses in the instrument to either one or the other or both of the contracts. The latter question is eliminated here because, as we have pointed out, the applicability of the restriction against the assignment of the lease without written consent to the alleged purported assignment of the purchase option disappeared with our holding that the purported assignment was completely ineffective as such. The former is not present either because the *exercise* of the purchase right did not occur until after the termination of all rights under the lease and, therefore, it cannot be said to have been in derogation of the leasehold. Furthermore, there is no proper question in this law suit involving the purported assignment. The action here is brought by the optionees themselves. It is not brought by the purported assignee, the third party, by virtue of the purported assignment. Whatever rights there may be between the plaintiffs and the third person claiming as their assignee are extraneous to this proceeding and cannot affect in any way the rights and obligations of these parties to each other.

As found by the court, the plaintiffs have fulfilled every obligation and covenant undertaken by their con-

tract of lease and, by their giving notice of election to purchase the property, they have converted their option right into a firm contract of purchase and sale. The plain fact seems to be that although the defendant has accepted and enjoyed all the benefits provided for her as a lessor of the premises, she now seeks to avoid the fulfillment of her obligations under the purchase option. To permit this would be inequitable and unjust and would sanction her repudiation and violation of her valid contractual covenant.

The appellants also call attention to the exact wording of the option clause and invite its careful reading. They seemingly suggest that the phrase "at the end of five years" fixes the time for *exercise* of the option to be five years from the date of the execution of the "Lease and Option to Purchase" agreement which was February 11, 1950. While it is not necessary to accept this view in order to make proper disposition of this case, we may say that it is not without merit, and it would not be illogical to conclude that the period "at the end of five years" speaks from the date of the instrument granting the option rather than from the date of commencement of the lease period. However, as adoption of this meaning would only serve to shorten the time between the giving of notice of election to purchase and the expiration of the time limited therefor, we need not determine the point. On the other hand, it may explain that plaintiffs felt unsafe in longer deferring the giving of the notice of election to exercise the option to the possible jeopardy of their right to buy the property.

To conclude we must hold that there was a valid and subsisting option to purchase contained in the agreement between the parties bearing date and executed February 11, 1950; that the notice of election to exer-

cise the option of purchase given on February 2, 1955, accompanied by a cashier's check for $500, the amount to be paid as a first installment on a purchase price of $6,000, as provided in the option agreement, was a proper and timely notice of election to exercise the option given; and that the plaintiffs are entitled to a decree requiring specific performance of the purchase and sale agreement resulting from plaintiffs' exercise of the option, but that a conveyance of the properties from the defendant to the plaintiffs shall await the completion of the payment of the purchase price in accordance with the terms of the agreement of February 11, 1950. The judgment of the district court is, therefore, reversed and remanded with direction to enter its proper judgment in accordance with this opinion.

REVERSED AND REMANDED.

Mr. Chief Justice Blume joins, concurring.

Mr. Justice Parker dissenting.

Opinion of Mr. Justice Parker, dissenting.

I regret that I cannot concur with the views of my colleagues. In my opinion, the judgment should be affirmed.

Although dissents often tend toward uncertainty in a field of the law rather than toward clarification, I feel obligated in this instance to present my reasons.

The statement of the case heretofore made would seem to be sufficient if there be added thereto the portions of the original agreement which dealt with termination and prohibition against assignment. They are as follows:

Termination: "The terms of this lease shall begin on the first day of March 1950 and continue during and until the First day of March 1955, unless sooner terminated by violation of any of its conditions, or by mutual agreement. Whenever terminated, the party of the second part agrees to peacefully surrender up the premises to the party of the first part * * *.

$*$ $*$ $*$ $*$ $*$

"It is hereby agreed that should the party of the second part fail or refuse to carry out and perform any of the conditions of this lease, then and in that event, the party of the first part may declare this lease terminated by giving ten days' notice * * *."

Prohibition Against Assignment: "It is further agreed by the said party of the second part, that neither he nor his legal representative will sublet said premises, or any part thereof, or assign this lease, without the written consent of the party of the first part."

Defendant in her answer set up three reasons why she contended that the "Farm Lease and Option to Purchase" agreement was not effective at the time of the purported exercise of the option by plaintiffs since she had given notice of termination of the lease agreement after:

(1) The rental had not been paid in the time and manner provided;

(2) Plaintiffs had failed to maintain, repair, and keep up the improvements and fences on the leased premises; and

(3) Plaintiffs had assigned and transferred the agreement to one Nielson.

As to the first, the trial court found that plaintiffs had paid their required rental and were not in default

—although there seems to have been considerable evidence to the contrary which would have justified an opposite finding.

As to the second, the court made *no* finding regarding the allegation that plaintiffs had failed to maintain and repair the leased premises. It is noteworthy that there was substantial evidence tending to prove lack of proper maintenance of the premises. Such evidence met with objection which the court overruled —probably rightly so because it is generally held that notice of termination need not set out the reasons therefor. See 52 C.J.S. Landlord and Tenant § 769. *Cf.* Russell v. Allard, 18 N.H. 222; Granger v. Brown, 11 Cush. (Mass.) 191; Zucco v. Farullo, 37 Cal.App. 562, 174 P. 929.

As to the third, the court found that plaintiffs had assigned the agreement to Nielson and that this was contrary to the provisions in the original agreement. However, as the majority opinion points out, the mere taking of initial steps to effect the assignment will not itself work a forfeiture. Thus, strictly speaking, the plaintiffs had not completed their assignment to Nielson before the notice of forfeiture was given, or even before they elected to purchase under the option. Therefore, there is some merit to the view that this finding could not be the sole basis of the judgment. Accordingly, it seems that technically speaking there is ground for reversal of the trial court because any violation of the original agreement by plaintiffs was either rejected by the trial court or eliminated by the majority opinion. Nevertheless, there are other considerations which merit our attention.

It has often been said that if a judgment of a trial court appears to be right for any reason it is the duty of the reviewing court to affirm it even though it be

based upon a ground insufficient to warrant it if another ground exists which is sufficient. See 3 Am. Jur. Appeal and Error § 1163. See also 5 C.J.S. Appeal and Error § 1849. In Peterson v. Johnson, 46 Wyo. 473, 28 P.2d 487, 489, 91 A.L.R. 723, we said, "If the judgment given can be sustained on any theory, it may be affirmed." Bearing this in mind we advert to the proof which was adduced as above outlined. It would seem sufficient on which to base the judgment heretofore entered.

The general evidence presented in the trial court should probably be reviewed in order that there be a full picture of the status of the contracting parties since it has often been held that a court should take into consideration the conduct of the parties and all the circumstances in a case of this nature. See Otis Oil & Gas Corporation v. Maier, 74 Wyo. 137, 284 P. 2d 653. See also Hake v. Groff, 232 Mich. 233, 205 N.W. 145; Burrows Motor Co. v. Davis, D.C.Mun.App. 76 A.2d 163; Prichard v. Kimball, 190 Cal. 757, 214 P. 863; and Mott v. Cline, 200 Cal. 434, 253 P. 718. In' this case the record showed a mother leased approximately a section of land and a number of cattle to her son and gave him an option to purchase the land at something less than ten dollars per acre, to be paid for over an eleven-year period with no additional charge for interest. The rental was quite nominal. In addition to the testimony regarding the difficulties between the parties as to the payments of rental there was substantial evidence that the son failed to maintain the place properly, overgrazed it, and permitted the person to whom he expected to assign his rights to place large herds of cattle thereon. The mother had apparently attempted on different occasions to secure some relief from the inequities of her situation, with little success, and finally, after a transfer of the land to a third person was imminent, she attempted to ter-

minate the agreement. If a lease so provides, a landlord may terminate same upon notice and without further act or repossession. See generally 51 C.J.S. Landlord and Tenant § 114; 32 Am.Jur. Landlord and Tenant § 870; and 26 Am.St.Rep. 912. *Cf.* Larsen v. Sjogren, 67 Wyo. 447, 226 P.2d 177. See also Annotation, 118 A.L.R. 283.

In the light of all of the evidence and the other matters disclosed in the record, it would appear that there are several grounds upon which the judgment of the trial court might be sustained. This thought becomes more compelling when it is realized that a principle of equity must be invoked if the court is to permit the son to buy this property so that he can sell it at a profit. It has been said:

" * * * equitable relief by way of specific performance should not be granted to plaintiff unless his course of conduct relative to the transaction has been one that warrants the approval of a court of equity. * * * Specific performance is a remedy of grace and not a matter of rights, * * * and the test of whether or not it should be granted depends upon the peculiar circumstances of each case * * *. The granting of this equitable remedy lies within the discretion of the court. * * *" MacGlashan v. Harper, 299 Mich. 662, 1 N.W. 2d 30, 32.

See also 49 Am.Jur. Specific Performance § 7; Annotation, 65 A.L.R. 7, 63; and Otis Oil & Gas Corporation v. Maier, supra.

It would seem that the employment of equitable principles in the disposition of litigation should be reserved for instances which clearly merit their use.

Perhaps a discussion of the problem should not be concluded without reference to a statement made in the principal opinion that:

"All that was necessary to transform that option from an unambiguous and certain offer to sell within the time limited was the acceptance of the offer by plaintiffs' election within that time to exercise the option to purchase, whereupon it immediately became a firm contract of purchase and sale."

This oversimplifies the problem. It is generally conceded that:

"Whether the option to purchase contained in a lease is an independent agreement, or in connection with the lease forms one entire agreement, depends on the intention of the parties, and this is to be resolved by the construction of the instrument read in the light of its circumstances. * * *" 51 C.J.S. Landlord and Tenant § 81, p. 638.

And see Prichard v. Kimball, supra. From a full and comprehensive examination of the instrument in issue here, it would appear to be impossible to separate the lease and the option by any reasonable and logical method. The reason for the existence of an option in a lease is also important to consider, and this has been well expressed by the court in the case of Gilbert v. Van Kleeck, 284 App.Div. 611, 132 N.Y.S.2d 580, 585, wherein it was said:

" * * * the question of whether an option to purchase contained in a lease is assignable apart from the lease is basically a question of the intention of the parties. It is possible to draft the provision so as to give the lessee an option to purchase as an independent contractual right, separable from the lease, but such a provision would be an unusual one. The principal purpose of a first option to purchase is to protect the lessee's interest in continued possession of the premises by assuring him of an opportunity to purchase the premises before they are sold to anyone else. A subsidiary purpose is to encourage the lessee to make improvements upon the premises which he might not otherwise make. These purposes would be defeated if

the lessee, while keeping the leasehold estate, were to assign the option to a stranger. It is therefore to be inferred, in the absence of an expression of an intention of the parties to the contrary, that the option was intended to be inseparable from the leasehold estate. 1 American Law of Property, § 3.82, p. 361."

The basic instrument here in issue makes no provision for a deed to plaintiffs and a mortgage back to defendant, for a deed to be placed in escrow, or for any other method of effectuating the option. If, as the court says, it be assumed that the moment the plaintiffs accept the option it is immediately transformed into a contract of purchase and sale then we are faced with two alternatives: Either the conditions and requirements set out in the original instrument must continue to apply throughout the eleven years until the last payment has been made or the court must constitute out of whole cloth the conditions which are to control for the remaining part of the sixteen-year period (five-year lease and eleven years for payment under the option).

Assume for the purpose of illustration that we are to say that the "Farm Lease and Option to Purchase" immediately becomes a contract of purchase and sale, Is it governed by all of the provision in the original lease including that against assignment, or will the trial court set up the terms and conditions which are to control in the event of some default?

This is a problem not simple of solution; but if the case is to be reversed, then the directions to the trial court must be explicit. I respectfully suggest that they must conform substantially to the terms of the original instrument which would certainly prohibit the assignment of the property or any interest therein to anyone until the date of the last payment provided in the original agreement, i.e., March 2, 1966.

## ON PETITION FOR REHEARING

(No. 2806; June 3rd, 1958; 325 Pac. (2d) 880)

OPINION ON PETITION FOR REHEARING

Mr. Justice HARNSBERGER delivered the opinion of the court.

Appellee's petition for rehearing reiterates contentions previously advanced in resisting the appeal to this court where it was contended (1) the lease and option in question were cancelled and terminated by appellee's claim of default; (2) that appellants had not timely exercised their purchase option; (3) that to hold there was a valid option would require writing a new contract (presumably, as stated in the opinion,

because it lacked provision for a conveyance) and (4) that equitable considerations should have moved us to affirm the judgment of the court below. These matters were fully dealt with in this court's original opinion, and will not again be considered, as no new or additional reasons have been advanced for so doing.

It is also represented that this court should now notice matter entirely outside the record. This we may not do.

DENIED.

Mr. Chief Justice BLUME concurs.

Mr. Justice PARKER dissents.