ARNOLD INDRELAND and OLGA INDRELAND, HUSBAND AND WIFE, PLAINTIFFS AND RESPONDENTS, SARAH INDRE-LAND MARTINEZ, DEFENDANT AND APPELLANT.

No. 11477.
Decided Dec. 10, 1968.
As Amended on Rehearing March 14, 1969.
451 P.2d 92

424

Allen L. McAlear, H. A. Bolinger, Jr., (argued), Bozeman, for defendant-appellant.

Byron L. Robb, Livingston, for plaintiffs-respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

Plaintiff buyers commenced this action to require defendant to complete performance of an agreement to sell certain lands in Park County. The district court entered judgment for plaintiffs, ordered the seller to execute and deliver a deed to them, subject to a prior mortgage and a life estate for defendant in a part of said lands; and ordered plaintiffs to execute and deliver a note and mortgage to defendant in return. From such judgment defendant appeals.

Plaintiff, Arnold Indreland, is a brother of defendant. The defendant and her husband (since deceased) made a written lease and option to purchase agreement with plaintiffs dated November 12, 1964. The lease covers 852 acres of hay and pasture land, 90 head of cattle, and ranching equipment. The term was for 2 years ending November 30, 1966. The consideration was a cash rental of $3,000 per year, which rental would apply as a payment on the purchase price of $45,000 in the event that the lessees exercised their option to purchase.

Prior to the execution of the lease, plaintiffs lived in California. After almost two years of visiting and writing back and forth, plaintiffs moved to Montana and took over the ranch of defendant. In the spring of 1964, defendant consulted an attorney who, at her request and direction, drew a lease and option between herself and husband as ''lessors'' and Indrelands as ''renters'' a copy of which she mailed to the Indrelands in California. This proposed agreement was not signed, but nevertheless, plaintiff Arnold Indreland quit his job, gave up his government pension benefits, and in August of 1964, Indrelands moved to the Park County ranch lands where they have resided since. After several modifica-

tions, including addition of what might be termed a life estate to defendant Martinez of 27 acres, a "lease and option" dated November 12, 1964, on said lands was finally executed. The lands involved form a more or less cross shaped ranch unit running lengthwise from east to west, with an old set of buildings comprising the home place. The road to the home buildings circles on a hillside around the 27 acres in which defendant reserved a life estate, so that in good weather it is not necessary to cross the 27 acres, but in wintertime this upper road drifts in and in order to get to the home place it is necessary to cross the 27 acres near the creek bottom, which is the area where defendant later constructed a new house. The contract described the lands by reference to the recorded deed whereby defendant Martinez obtained title as follows: "the property situate, lying and being in the County of Park, State of Montana, as particularly described in WARRANTY DEED No. 76910, Filed for record on January 31, A.D.1958, at 4:45 o'clock P.M., and recorded in Book 95 of the Deeds, at Pages 504-5; excepting all lands situate in Section Twenty-seven (27) of the above named Warranty Deed, comprising approximately twenty-seven (27) acres, more or less. This exception shall be carried forward and shall be a part of the Warranty Deed in the event that a sale of the premises is consummated in conformance with this agreement; provided, however, that this exception shall be voided when the Lessors, or the survivor of them, are deceased or at any time the Lessors abandon such reserved lands."

The option portion of the agreement reads as follows:

"IT IS FURTHER UNDERSTOOD, AND AGREED that in the event that the Renters decide to purchase said premises they may do so by notifying the Lessors of their intention to purchase, but must give to the Lessors thirty (30) days notice prior to the expiration of this lease and option that they wish to purchase the lands and premises herein described; it is expressly understood and agreed that this option applies to the

lands herein before described only, and not to the personal property.

"The purchase price for such lands and premises shall be FORTY-FIVE THOUSAND and no/100ths Dollars ($45,000.-00), and if said option is exercised, the Renters shall be entitled to apply all rents paid by them for the use and occupancy of said premises; at the time of exercising such option they must pay to the Lessors an additional SIX THOUSAND and no/100ths Dollars ($6,000.00) upon the purchase price.

"The balance remaining upon the purchase price shall be paid in equal yearly installments, over a period of Fifteen (15) years, with interest at the rate of five per cent (5%) per annum upon the amount from time to time remaining due.

"The principal payment may be deferred for two (2) years, but the interest must be paid each year and deferments will not be given in the years succeeding the deferment which is given."

Plaintiffs occupied the property for two years and paid $6,000 in rentals. Shortly after the lease was signed, the good will between the parties changed to ill will. In May of 1966, Jose Martinez died. During the two year term, plaintiffs made numerous improvements.

Plaintiffs mailed the following letter to the defendant on October 26, 1966:

"Dear Mrs. Martinez:

"You are hereby notified that the undersigned have this date decided to exercise the Option to Buy the property situated in the County of Park, State of Montana, as particularly described in WARRANTY DEED NO. 76910, Filed for record on January 31, A.D.1958, at 4:45 o'clock P.M. and recorded in Book 95 of Deeds, at Pages 504-5; excepting all lands situate in Section Twenty-seven (27) of the above named Warranty Deed, comprising approximately twenty-seven (27) acres, in conformance with the terms and conditions set forth in the LEASE AND OPTION entered into the 12th day of November

1964, between JOSE MARTINEZ and SARAH INDRELAND MARTINEZ, husband and wife, and ARNOLD INDRELAND and OLGA INDRELAND, husband and wife.

"Accordingly, you are requested to furnish Merchantable Title (WARRANTY DEED), supported by current Abstracts of Title, including the First Water Right of one hundred (100) Miners Inches of Water, all Timber Rights and all Mineral and Oil Rights appurtenant to the premises. You are further requested to provide necessary documents for Recording of Mortgage, and receipts indicating payment of Taxes or other assessments to 1 December 1966.

"It is further requested that action be initiated to effect disposition of your personal property remaining on the premises. * * *"

The defendant, upon receipt of the foregoing letter, mailed the following letter to the plaintiffs, dated October 31, 1966:

"Arnold Indreland

"Olga Indreland

"P. O. Box No. 827

"Livingston, Montana 59047

"This is to acknowledge receipt of your letter dated October 26th, 1966, stating that on that date you decided to exercise your Option to buy the land leased in our Agreement dated November 12, 1964.

"Our Agreement provides that at the time you exercise your Option you should pay me Six Thousand Dollars ($6,000.00), which was not paid. I consider your notice to be of no effect without the money.

"Certainly you would not expect me to make plans for you buying the place without your paying the money so that I know that you have this investment.

"Nothing in the Agreement provides that I am to furnish any abstract or that you receive the first water right to 100 inches of water. Part of the water right was appropriated for and used for irrigating the land in Section 27.

"I do not understand your reference to a deed or mortgage. If you had exercised your Option to purchase, the balance of the purchase price was to be paid over a period of fifteen (15) years and you certainly would not receive a deed until the property was paid for.

"Under the terms of the lease you are to feed and properly care for the cattle until November 30th, at which time they are to be turned over to me, together with the machinery and equipment under the terms of our lease.

"/s/ SARAH INDRELAND MARTINEZ
    Sarah Indreland Martinez."

Plaintiffs filed the complaint in this action on November 28, 1966, alleging ownership of the land in question by the defendant, subject to a mortgage indebtedness; that plaintiffs had performed all of the covenants and conditions of the option agreement and were at all times and still are ready, willing and able to complete said contract on their part; that plaintiffs hereby tender into court the sum of $6,000.00 provided for in said agreement as the down payment due in exercising their option to purchase said property; that defendant has failed, refused and neglected to make, execute a warranty deed to the plaintiffs, or to perform the other conditons on her part agreed to be performed in said contract.

The judgment appealed from requires the following:

1. That defendant forthwith make, execute and deliver a warranty deed conveying the lands, tenements, herditaments and water rights hereinafter described to plaintiffs, Arnold Indreland and Olga Indreland, husband and wife, subject to a reservation of a life estate to defendants in and to the 27 acres lying in Section 27, Township 2, South, Range 8 east, M.P.M., in Park County Montana, or until her abandonment thereof, and subject to a mortgage indebtedness originally for $10,000 due the Federal Land Bank of Spokane, Washington.

2. That the plaintiffs execute their note payment to the defendant for $33,000 payable in annual installments of $2,200

for 15 years plus accrued interest with each installment subject to a condition that the principal payments may be deferred for two years and that the plaintiffs issue a mortgage on the same terms.

3. That if the parties failed to comply with the court's order within 10 days that a chancellor or receiver would be named by the court to execute and deliver such instruments.

4. That upon the defendant executing and delivering the deed, the clerk of court pay to the defendant the sum of $6,000 previously deposited by the plaintiffs.

5. That within a reasonable time not to exceed 18 months the defendant furnish to the plaintiffs an up-to-date abstract or title insurance policy for $45,000 showing the lands to be free and clear of all encumbrances including said mortgage debt for $10,000 to the Federal Land Bank of Spokane.

6. That in the event defendant fails, refuses or neglects to make the payments required by said mortgage to the Federal Land Bank of Spokane, or to perform the conditions set forth in paragraph 5 above, the plaintiffs may withhold and deduct from any payments due by them to defendant such sums as are necessary to make such payments to the Land Bank and to obtain a release of said Land Bank mortgage, and plaintiffs shall be given full credit for such payments upon their note and mortgage to defendant.

7. That plaintiffs have and do have the privilege of using the said 27 acres for calving, branding, dehorning, castrating, vaccinating, cutting, sorting, loading and unloading stock, and the right to travel over and across the same, but that plaintiffs shall exercise said rights and privileges so as to interfere as little as possible with defendant's life estate in and to said 27 acres.

Generally the issue presented is whether the plaintiffs exercised the option to purchase according to the terms thereof.

More specifically, the defendant objected by motion to dis-

miss, by motion for summary judgment and objected to findings. These objections raise these issues:

(1) The option payment of $6,000 was not made at the time the plaintiffs attempted to exercise the option.

(2) The payment of $6,000 was never offered in a valid tender.

(3) The option was never exercised according to its terms.

(4) The heretofore set out details with reference to a life estate in the 27 acres were in error.

The defendant, appellant here, argues that the option features are:

(1) plaintiffs could exercise it *anytime* during the two year term of the lease up to 30 days prior to expiration.

(2) "at the time of exercising such option they must pay to the Lessors an additional SIX THOUSAND and no/100ths Dollars ($6,000.00) upon the purchase price."

Yet, if such be taken literally, that plaintiffs could exercise the option *anytime*, other terms of the lease would require the paradoxical situation where the buyers would pasture seller's livestock and the seller would be paying taxes and insurance. This creates an obvious ambiguity and the trial court allowed evidence to determine the parties' intentions. Arnold Indreland testified that he understood he *could not* exercise the option until the lease ended with 30 days notice. Even defendant testified that at the time of entering into the contract her husband was willing to extend the time for making payments, as she put it, "This was an oral agreement out of charity and love."

It is clear that the evidence outside the written agreement removes the ambiguity and gives effect to both the lease provisions and the option provisions. Sections 13-702, 13-713, 13-718, 49-133 R.CM..1947; Brown v. Griffin, Mont., 436 P.2d 695, 25 St. Rep. 77.

Further, the option provisions do not provide for *when* defendant will execute a warranty deed. Plaintiff's letter

to defendant dated April 18, 1964, just a few months before the agreement was executed, was admitted which clearly contemplated title passing with a mortgage back at 5% interest on the unpaid balance.

The remaining ambiguity is as to *when* the $6,000 payment was due; that is, with the notice of intention to exercise the option or at the end of the lease term.

The option provides:

"* * * that in the event the Renters decide to purchase said premises they may do so *by notifying the Lessors of their intentions to purchase, but must give to the Lessors thirty days notice prior to the expiration date of this lease and option that they wish to purchase* the lands and premises herein described * * *" (Emphasis supplied.)

This provision standing alone would indicate that the option continues right to the end of the lease period, and the only requirement up to that time was for plaintiff renters to give 30 days notice that they intended to buy *at the end of the lease term.* There is good and substantial law hereinafter expressed that "giving of notice to buy" is a separate act from actually "exercising the option," and while defining of these terms may be more a question of law than of fact, still this creates a doubt as to the meaning of such terms in the contract.

The following paragraph in the option then provides for a price of $45,000 and states:

"* * * at the time of exercising such option they [renters] must pay to the Lessors an additional SIX THOUSAND and no/100ths Dollars ($6,000.00) upon the purchase price."

██ This last provision does not alone resolve the question for while it requires the $6,000 payment at the time of exercising the option, it does not explain if the option is "exercised" simply upon giving notice, at the end of the lease term, when defendant lessor furnished a deed, or at some other time. Nor do the remaining option terms shed any light, so it became not

only proper but necessary for the trial court to consider the circumstances under which the lease was made and the parties' conduct and understanding of its terms to enter an equitable and fair judgment. On this point, plaintiffs submitted testimony that they understood the purpose of the 30 day notice was to allow the parties to anticipate any necessary arrangements prior to the end of the lease, so they sent such notice and felt they were then bound to buy. There would be little logic in requiring plaintiff renters to pay the additional $6,000 until the end of their lawful tenancy of the premises, especially inasmuch as they were obligated to look after and feed defendant's livestock until then. This substantiates plaintiffs' position that they understood that the option *could not* be exercised until December 1, 1966, and that giving the 30 day notice was intended by the parties to be an act separate from exercising the option. Braten v. Baker, 78 Wyo. 273, 323 P.2d 929; A.L.R.Anno. pp. 1432-1437.

■ We hold that plaintiffs had until the end of the lease period to tender the $6,000 payment.

Now, then, appellant next urges that a deposit of $6,000 into court without a court order was not a tender at all and that other requirements spelled out in the notice of election to exercise the option are conditional, thus making it other than an unconditional tender.

■ We shall not review the evidence, but the district court found upon substantial evidence, if believed, that a tender to defendant was useless and impossible. The suit was filed the same day as the deposit was made; this being prior to the end of the lease period, certainly it was notice to defendant that the plaintiffs were in good faith and were ready, willing and able to complete the purchase. Under the circumstances here, a tender as such would be excused. Winslow v. Dundom, 46 Mont. 71, 125 P. 136; Long v. Needham, 37 Mont. 408, 96 P. 731; Shaw v. McNamara & Marlow, Inc. 85 Mont. 389, 278 P. 836; Brown v. Griffin, supra.

Finally, we consider the problem of the 27 acres reserved as a life estate.

We shall repeat the exception contained in the description:

"excepting all lands situate in Section Twenty-seven (27) of the above named Warranty Deed, comprising approximately twenty-seven (27) acres, more or less. This exception shall be carried forward and shall be a part of the Warranty Deed in the event that a sale of the premises is consummated in conformance with this agreement; provided, however, that this exception shall be voided when the Lessors, or the survivor of them, are deceased or at anytime the Lessors abandon such reserved lands."

The district court found that a life estate was reserved in defendant. The appellant takes exception to the findings and conclusion as to this and raises the matter on appeal. We find the issue properly raised even though respondents state that the issue was not pleaded in the defendant's answer.

The 27 acre piece contains some 11 acres out of 43 irrigated acres on the original place. In the first agreement prepared, no exception existed. In the agreement finally signed by the parties, certain matters were deleted on the 4th and last page. The language stricken and initialed as deleted is language in a different type and not continuous from the previous page and contains similar language to that found as creating a life estate previously quoted. It contains other language concerning ingress and egress to the reserved area to the lessors. The appellant urges that the intention of the parties was to also have stricken other language creating a life estate. Appellant urges that the intent can be found by the fact that defendant and her husband built a new home on the 27 acres costing some $17,000. Appellant argues that this fact indicates an intention to except the 27 acres from the contract. The trial court found otherwise, and we hold that there was sufficient evidence to support the finding. By stipulation the new home just mentioned is agreed to be personal property of the appellant.

Having examined all of the contentions raised as issues by the appellant and finding no merit to them, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, ADAIR and JOHN C. HARRISON, concur.

---

ARNOLD INDRELAND AND OLGA INDRELAND, HUSBAND AND WIFE, PLAINTIFFS AND RESPONDENTS, v. SARAH INDRELAND MARTINEZ, DEFENDANT AND APPELLANT.

No. 11477.

PER CURIAM:

On Petition for rehearing in the above-entitled cause, the appellant petitioner makes the point that the judgment of the district court orders a deed to be given with the tenements in a reserved life estate as they existed at the time of judgment rather than at the time the agreement was entered into; and that the effect of this is to prevent the appellant from removing her new dwelling house from the premises.

This Court being unable to fully explore the merits of this contention now makes its order as follows:

That a rehearing is granted limited to the foregoing aspect of the case; that is as to the tenements in the reserved life estate as of the date of the agreement or the date of the judgment.

DATED this 3rd day of February, 1969.

---

ARNOLD INDRELAND AND OLGA INDRELAND, HUSBAND AND WIFE, PLAINTIFFS AND RESPONDENTS, v. SARAH INDRELAND MARTINEZ, DEFENDANT AND APPELLANT.

No. 11477.

This matter was decided in an opinion rendered by this Court

on December 9, 1968. By order of February 3, 1969, this Court granted a rehearing limited to the tenements in the reserved life estate pertaining to the problem of whether the newly constructed dwelling house was in effect personalty and subject to removal from the premises or realty. On oral argument held March 12, 1969, counsel for plaintiffs and respondents Indreland stipulated in open Court that the subject dwelling could be removed from the premises at any time. The opinion heretofore promulgated is hereby ordered amended by inserting on page 13, on line 9, the following sentence:

"By stipulation the new home just mentioned is agreed to be personal property of the appellant."

IT IS SO ORDERED.

DATED this 25th day of March, 1969.