McMurtry v. Blake.

JAMES H. McMURTRY v. CELINA B. BLAKE ET AL.

FILED MAY 22, 1895. No. 6147.

Contracts: REFUSAL TO CONVEY LAND: DAMAGES. Where one accepts of a conveyance of real property upon the express condition that it is to be by him conveyed to another, his willful re-

fusal to so convey renders him liable for such damages as shall thereby be caused to the party entitled to receive conveyance, either by expenses of litigation rendered necessary, or from the loss of an opportunity to sell such lands at a good price while conveyance is wrongfully withheld.

ERROR from the district court of Lancaster county. Tried below before TUTTLE, J.

*J. R. Webster* and *Reese & Gilkeson*, for plaintiff in error.

*Stevens, Love & Cochran, contra.*

RYAN, C.

In this case there was in the district court of Lancaster county a judgment in favor of Celina B. Blake, the original plaintiff, against James H. McMurtry for the sum of $2,774.67 and costs. To reverse this judgment McMurtry prosecutes error to this court. J. R. Webster was joined as a defendant in error for the reason that, sued with Mc-Murtry, there was a verdict in his favor.

In the earlier history of the difficulties out of which this case grew there was delivered an opinion of this court by its then chief justice (*vide Blake v. McMurtry*, 25 Neb., 290), in which most of the essential features of this action were fully described. In argument, it is intimated that this opinion was based upon a radical misconception of the facts contained in the record at that time under consideration. It is very difficult to imagine how we can treat the opinion referred to as less than conclusive of the correctness of every proposition of fact therein stated, for, by consent of all parties, it, together with its entire syllabus, as well as the compendium of the brief of counsel for each side, were read to the jury. At the risk of reiterating what may be found already well stated in the case referred to, a brief statement of the facts will now be attempted. On the 29th day of April, 1878, Wealthy P. Gregory, with her husband, made a mortgage to R. E. Moore on such

part of the north half of the northwest quarter of section 34, township 10 north, range 6 east, 6th P. M., as was then owned by said mortgagors or either of them. By warranty deed of date of April 25, 1872, which was filed for record on the same day, there had been conveyed five acres of the above tract to R. R. Tingley, by whose warranty deed of date and filed for record January 30, 1879, said five-acre tract was conveyed to Hannah L. Tingley. The title of the defendant in error, Celina B. Blake, was by *mesne* conveyances derived from Hannah L. Tingley. R. E. Moore began foreclosure proceedings on his mortgage, in which proceedings Hannah L. Tingley was made a defendant, and on September 12, 1879, she answered, asserting her title. Under a stipulation of the parties a decree was entered in favor of Moore, from which the five-acre tract owned by Celina B. Blake was omitted. On March 26, 1881, R. E. Moore obtained leave to amend his petition and thereon took a decree, June 25, 1881, which included the five-acre parcel owned by Hannah L. Tingley, without notice to or appearance by her, or her representative. To enforce this decree an order of sale, after some years, issued against the entire eighty-acre tract above described. The defendant in error, who had in the meantime become the owner of the Hannah L. Tingley five acres, thereupon caused to be prepared a petition for an injunction against the sale of the parcel of land of which she was now the owner, and secured a temporary order thereon as prayed. F. M. Hall, an attorney of R. E. Moore, to whom was shown the above petition and order, to prevent interference with the proposed sale by the sheriff, thereupon executed the following instrument:

"LINCOLN, NEB., August 10, 1886.

"In consideration that Celina Belle Blake, at my request, has not enjoined the sale of the below described five acres this day, I agree, on confirmation of sale in Moore v. Gregory, to convey and quitclaim to her the five acres de-

scribed as commencing fifty rods south of the northeast corner of the northwest quarter of section 34, township 10 north, range 6 east, thence west forty rods, south twenty rods, east forty rods, north twenty rods to beginning, a part of lands purchased at sale.　　　F. M. HALL,

*"Bidder at Sale."*

The entire eighty-acre tract was thereafter purchased by Mr. Hall, but the confirmation of sale was resisted by Wealthy P. Gregory and her husband for the purpose of securing to themselves the benefits of homestead exemptions under the statutes of this state. The resistance on their behalf was conducted by their son, John S. Gregory, Jr., an attorney at law. The manner in which confirmation was finally secured was stated by Mr. Hall thus: "We * * * never did get the sale confirmed at all until after the agreement was made by which I was to deed this whole eighty acres of land to McMurtry, and before I deeded it to McMurtry I cannot say whether the proposition was made by John S. Gregory or McMurtry, but one or the other proposed to me, as a member of our firm, that if I would deed this land to them, after they got a deed to it, they would pay our mortgage, interest, and costs. When that proposition was made I went to General Webster, who represented the parties to this contract to whom I had agreed to deed, and I just laid these facts before him. * * * My understanding both with General Webster and with McMurtry was that my contract would be carried out; that is, if I deeded this land to McMurtry he would convey, according to the terms of my contract with General Webster, to his client. With that understanding I made this deed to McMurtry." In the course of his testimony Mr. Hall said that several times previous to making the deed to McMurtry, Mr. Gregory had offered to pay off the Moore mortgage if witness Hall would turn it over to include the five acres, because he (Gregory) was of the opinion that Mrs. Blake was estopped and concluded

by the foreclosure.   This, Mr. Hall said, he declined to do because of his contract with Mrs. Blake.

Mr. McMurtry testified that he owned thirty-one and a quarter acres of the eighty mortgaged to Moore.   Further testifying he said : When this sale had been made, which I knew nothing of till after the sale was made,   *   *   * I wished to get my land out of this litigation.   I then said to Gregory that I would pay the amount of the R. E. Moore judgment if I could hold my land out of the sale and stop the injunction proceedings.   He said if I would take a deed to the land from Mr. Moore and hold it so as to save his mother's homestead and any right he might have, or then might have to this north half of the north-east quarter of 34-10-6, that he would not enjoin or fight the sale of the land at that time.   I went and saw Mr. Hall and told Mr. Hall that I would take his place in the contract that he had made exactly as he stated, and would convey this land to Mrs. Blake as soon as the matter could be settled, and in pursuance to that contract I paid Mr. Hall the money for his clients.   He told me he would see me later with regard to it.   Then General Webster called on me and told me of this contract, and told me what I was doing, and the position I would be in, and said that if I would promise him that I would make no transfer of this five acres of land belonging to Belle Blake and would hold the land subject to any order the court might make on this land that he would consent to this matter.   I think this was about the position it was in, and in pursuance of that contract I paid the money—somewhere between $900 and $1,200—and took the deed of Mr. Hall to get my land out of the controversy and to hold the other land till I was ordered to deed it by the court.

(Question by General Webster.)   And I brought the action for Mrs. Blake immediately ?

A.   Yes; the same day.   I think the papers were served on me before the deed or about the same time the deed

was made to me for the land—I think the same time—the beginning of the suit by Belle Blake against me for the recovery of' the land. The only object I had in the matter was to clear the cloud from my own land.

On his cross-examination Mr. McMurtry testified that he never paid particular attention to the suit in the district court or in the supreme court and knew nothing about it— knew nothing about who it belonged to.

Following his statement that his contract was to deed to Mrs. Gregory was the question if it was not also to deed to Mrs. Blake. Mr. McMurtry testified :

No, sir; the contract with Hall was to deed to Mrs. Blake. The contract with Grégory was that I was to deed to Gregory.

Q. The same land?

A. Yes.

Q. That is the position you were in?

A. That is exactly the position I was in. I was between the devil and the deep sea.

In this uncomfortable dilemma Mr. McMurtry voluntarily remained until released by the judgment of this court at the July term, 1888. ( *Vide Blake v. McMurtry*, 25 Neb., 290.) The deed from Mr. Hall and wife to McMurtry was dated March 25, 1887. It was then the duty of Mr. McMurtry to convey to Mrs. Blake. There was no excuse possible for his agreement to convey this land to Gregory thereafter in violation of his undertaking to carry out the stipulation of Mr. Hall that conveyance should be made to Mrs. Blake. Instead of conveying to her, however, Mr. McMurtry saw fit to compel Mrs. Blake to resort to legal proceedings to compel what it was his duty to do. By this course he in his own wrong deprived Mrs. Blake of the power to advantageously dispose of the subject-matter over which she was compelled to litigate. This enforced delay was at, his own risk, and, as there was evidence showing that Mrs. Blake in expenditures in the

litigation and the loss of opportunities to sell was damaged the full amount of the verdict, the plaintiff in error has no just cause for complaint.

It is urged, however, that by the evidence of Mr. Blake that Sherwin & Sherwin, a firm of real estate agents, had procured a would-be purchaser for the five acres at a high price the plaintiff in error was taken by surprise, and that, if an opportunity had been afforded, he could have contradicted this statement by the evidence of said real estate agents, as shown by their affidavits filed after the trial. It is worthy of note, however, that when Mr. Blake gave the evidence complained of there was no objection to its character, neither was there any attempt to secure a continuance. Not only was this true, but from an affidavit filed by a member of the firm of Sherwin & Sherwin it appears that the contradictory evidence could not have been made very direct or satisfactory. There was also evidence, on the trial, of J. H. Blair, another real estate dealer, that he, while the land was tied up in litigation, had by authority offered the same price for the disputed land as had been stated by Mr. Blake as the offer through Sherwin & Sherwin. Under these circumstances there was no error in refusing a new trial for the purpose of putting in evidence the statements of the individual members of the firm of Sherwin & Sherwin.

There is no criticism of the instructions either given or refused, neither is there any other question presented by the record. The judgment of the district court is

AFFIRMED.