DORA BECK, APPELLEE, V. GEORGE F. STAATS, APPELLANT.

FILED JANUARY 8, 1908. No. 14,972.

1. **Vendor and Purchaser: EXECUTORY CONTRACT: BREACH: DAMAGES.** The measure of damages for the breach by the vendor of an executory contract for the conveyance of real estate, where the breach is caused either from the refusal or the inability of the vendor acting in good faith, is the difference between the value of the land at the time of the breach and the price he contracted to receive, and in addition thereto the vendee may recover the amount advanced upon the purchase price.

2. **Case Overruled.** The third paragraph of the syllabus to *Reed v. Beardsley*, 6 Neb. 493, overruled.

3. **Vendor and Purchaser: IMPROVEMENTS BY TENANT: REMOVAL.** Upon an issue between the vendor and vendee of real estate, whose

contract fails to specify improvements made by a tenant in possession, but recognizes the existence of such and the right of the tenant to remove the same, the presumption is that such improvements were removed at the expiration of the lease.

4. **Trial:** VIEW OF PROPERTY BY JURY. Under section 284 of the code, providing for a view by the jury of property which is the subject of litigation, or the place where any material fact occurred, whenever in the opinion of the court it is proper, the court may in his discretion require the jury to view any such property within this state.

5. **Appeal:** DISCRETION OF COURT. Unless an abuse of discretion is shown, this court will not reverse a judgment of the district court, because of the refusal of the court to permit the jury to view the premises.

APPEAL from the district court for Dodge county: CON-RAD HOLLENBECK, JUDGE. *Affirmed*.

*F. Dolezal*, for appellant.

*Grant G. Martin*, contra.

EPPERSON, C.

In July, 1905, the parties hereto entered into a written contract wherein the defendant agreed to convey to plaintiff 80 acres of land in Saunders county on the 1st day of March, 1906. Plaintiff paid $100 in cash and agreed to assume $2,000 of an incumbrance and to pay a remainder of $2,460 upon maturity of the contract. When the contract was made, defendant owned but an undivided one-half interest in the land in controversy. He and one Harmon owned in equal shares this land and 80 acres adjoining it. In February, 1906, defendant sold and conveyed all of his interest in the land to Harmon. This action was brought to recover damages for the loss of plaintiff's bargain. She obtained judgment in the court below for $1,105.90, and defendant appeals.

Defendant contends that before the contract was executed he had his co-owner's verbal promise to convey his interest to defendant; that the contract was made upon the condition that Harmon would convey, but thereafter he re-

fused, though defendant in good faith importuned him
so to do. Evidence was introduced in support of this con-
tention. In conflict therewith, plaintiff's evidence is to
the effect that defendant represented to her that he had
procured Harmon's interest in the land. It is the defend-
ant's theory that the rule for the recovery of damages
against a vendor acting in good faith is that nominal dam-
ages only may be recovered, together with the amount de-
posited, with interest. He asked for and was refused an
instruction submitting this theory to the jury. We are
met at the threshold of this investigation with a conflict
in the decisions of this court. In *Reed v. Beardsley,* 6 Neb.
493, it was held: "On an agreement to exchange lands, if
one of the parties performs the contract on his part by
conveying, and the other neglects to do so, and finally puts
it out of his power to perform, the true measure of dam-
ages is the value of the property conveyed." The measure
of damages there was the value of the consideration given
by the vendee, and not the value of the property he con-
tracted to purchase. To the same effect is *McPherson v.
Wiswell,* 19 Neb. 117. And in *Eaton v. Redick,* 1 Neb. 305,
the vendee, upon rescission by his vendor, was permitted
to recover the amount advanced by him upon the pur-
chase price, although himself in default. These cases have
never been expressly overruled; but, in view of the de-
cisions following the contrary rule, they cannot be said
to establish the law in this jurisdiction. In *Wasson v.
Palmer,* 13 Neb. 376, it was said: "The proper measure of
damages was the difference between the contract price and
the actual value of the property at the time the contract
was broken." There the question of good faith on the
part of the grantor was no part of the case and was not
considered by the court. The same rule prevailed in *Car-
ver v. Taylor,* 35 Neb. 429; *Seaver v. Hall,* 50 Neb. 878;
*Nolde v. Gray,* 73 Neb. 373. In *Seaver v. Hall, supra,* after
reviewing the former decisions of this court, it is said by
Mr. Commissioner IRVINE: "It would appear that this
court has thereby placed itself on both sides of the much

disputed question as to whether, when the vendor cannot make title, only nominal damages can be recovered, or whether the vendee is entitled to the benefit of his bargain. Some cases hold that the former rule applies where the vendor acted in good faith (*Conger v. Weaver*, 20 N. Y. 140), and that the latter applies when the vendor was guilty of fraud (*Pumpelly v. Phelps*, 40 N. Y. 59). * * * It may well be doubted, however, whether, in a state where exemplary damages are not permitted, the measure of recovery should depend on the good faith of the vendor. The object of the law is to afford compensation, and not to punish, in civil cases, and the actual damage is the same regardless of the motive of the vendor." In *Violet v. Rose*, 39 Neb. 661, it was held that a vendee was entitled to recover damages caused by delay of his vendor in making the conveyance, and the measure of damages was the difference between the value of the property when it should have been conveyed and its value at the time of the delayed conveyance. For a wilful refusal to convey, a vendor, in *McMurtry v. Blake*, 45 Neb. 213, was held liable to the full extent of his vendee's lost opportunity to sell to advantage.

Defendant relies upon *Flureau v. Thornhill*, 2 Wm. Bl. (Eng.) *1078, and the decisions of the American courts in accord therewith. It was there held that, on a contract for the purchase of real estate, if the title proves bad, and the vendor is without fraud unable to make a good one, the purchaser is not entitled to damages for the loss of his bargain. Relative to the contract, Blackstone, J., said: "These contracts are merely upon condition, frequently expressed, but always implied, that the vendor has a good title." In *Hopkins v. Grazebrook*, 6 B. & C. (Eng.) *31, the vendor, at the time he contracted to sell, had substantially no estate, and the conditions of sale provided for a good title. It was held that the vendee could recover for the loss of his bargain. Such recovery was allowed also in *Robinson v. Harman*, 1 Exch. (Eng.) *850, wherein it appears that the defendant had agreed

to grant a valid lease, when he well knew that he had no power to do so. .In *Engel v. Fitch,* 3 L. R. Q. B. (Eng.) 314, s. c. 4 L. R. Q. B. (Eng.) 659, damages were allowed because the defendant failed to take the necessary steps, which he could have taken, to put his vendee in possession. In *Bain v. Fothergill,* 7 H. L. Rep. (Eng.) 158 (see Sedgwick, Leading Cases on Measure of Damages, 45), *Flureau v. Thornhill* was adhered to and subsequent cases reviewed. It was there said that *Flureau v. Thornhill,* must be taken to be without exception. The value of the English rule, however, is weakened somewhat by the language of Mr. Baron Pollock in *Bain v. Fothergill, supra.* He there adheres to the rule of *Flureau v. Thornhill,* but indicates that the doctrine of *stare decisis* should govern such contracts. He says: "All that has been hitherto said leads to the conclusion that the case of *Flureau v. Thornhill* was rightly decided, at the time it was decided, on sufficient legal principles, but if it was a decision to which at the time I could not have acceded, I should, nevertheless, think that a contract of purchase and sale of real property made at this day must be construed to be made on the footing of that decision being correct. All persons who prepare such contracts know of that decision, and that it has been acquiesced in and acted on for a hundred years. The contracts which such persons prepare are, therefore, made with the understanding that, upon failure to make out a satisfactory title, the rule as to damages enunciated in that case will be applied. Then such rule is by intention and understanding of the parties a part of the contract."

The great weight of authority in this country is less liberal to the grantor, and holds him liable, not for mere nominal damages, but for his grantee's loss of profits, or, as commonly stated, his loss of the bargain. "In some jurisdictions there is no deviation from this rule on account of good faith and inability to perform resulting from an unsuspected defect in the vendor's title; there the symmetry of the law relating to sales is preserved." 2 Sutherland, Damages (3d ed.), sec. 579. Good faith on

the part of the vendor was held in *Matheny v. Stewart*, 108 Mo. 73, not to excuse or protect him. In *Hammond v. Hannin*, 21 Mich. 374, it was said: "If a party enters into a contract to sell, knowing that he cannot make a title, he is remitted to his general liability, and the exception introduced by *Flureau v. Thornhill* does not apply. So if a person undertakes that a third party shall convey, and is unable to fulfil his contract, the authorities are that he shall pay full damages. * * * The cases before referred to, in which a party undertook to sell that which he did not own, and knew he could not control, may also, when the other party is not informed of the defect, be considered as involving a degree of bad faith, and have generally been so regarded by the courts." In *Pumpelly v. Phelps*, 40 N. Y. 59, it is said: "The rule that a vendor, who contracts to sell and convey real property in good faith, *believing that he has a good title*, and on discovering it to be defective, for that reason, refuses or is unable to fulfil his contract, is, in an action against him by the vendee for the breach, liable for only nominal damages, should not be in any degree extended, but strictly limited to those cases coming wholly and exactly within it. And where a vendor contracts to sell lands, in which *he knows, at the time, he has not title or the power of conveyance*, he is bound to make good to the vendee the loss of the bargain through his default. Nor, in such case, does it excuse the vendor that he acted in good faith, and believed, when he entered into the contract, that he should be able to *procure* a good title for his purchaser." In *Doherty v. Dolan*, 65 Me. 87, it was held: "This rule of damages is not to be varied, because the defendant, through unanticipated causes which he could not control, although acting in good faith, was unable to convey." 2 Sutherland, Damages (3d ed.), sec. 581. See, also, *Vallentyne v. Immigration Land Co.*, 95 Minn. 195; *Arentsen v. Moreland*, 122 Wis. 167, 65 L. R. A. 973; *Flecten v. Spicer*, 63 Minn. 454; 2 Warvelle, Vendors (2d ed.), sec. 936.

Where it is possible, and the wronged party demands

it, equity will require a performance of the contract. And where a party by his contract undertakes to convey property and is rendered unable, or refuses to do so, the law will require him to respond in full compensatory damages, and it makes no difference whether he wilfully disregards his contract, or is prevented through no fault of his own from conveying the title called for by his contract. His liability is created by the contract. He agrees to convey. The contract is necessarily reciprocal. Is there any reason in law or in equity for relieving a grantor because he is disappointed in not obtaining title, any more than there could be for relieving a grantee because he had failed, through no fault of his own, in obtaining the purchase price at the appointed time? It was the duty of the defendant and his privilege to provide in his contract against obstacles, and, if he undertakes without this precaution to convey title belonging to another, he does so at his peril. Any other rule would permit one to speculate in reference to the property of another without incurring any liability on his own part, but at the same time bind his grantee irrevocably. The real issue of fact in the case at bar is whether the parties hereto made their contract contingent upon defendant's obtaining the outstanding title. This issue was submitted to the jury under proper instructions. Defendant's theory was not sound in law, nor supported by competent evidence, and the court properly overruled his request for the instruction.

The contract provided for the conveyance of the land with all the improvements placed thereon prior to the making of a certain lease. Plaintiff's evidence of value was given with reference to the land as it stood at the maturity of the contract. Defendant assigns error in the admission of this evidence, because it failed to exclude the improvements made by the tenant. The contract failed to specify the improvements not conveyed. By his answer, defendant alleged that there were certain improvements made by the tenant, who was authorized to remove the same. The evidence discloses that this tenant had re-

moved prior to the maturity of plaintiff's ·contract. Presumably the improvements had been removed and were not considered by the witnesses who testified as to the value. If such was not the case, it was the duty of the defendant to prove the continued presence of the improvements. In this he failed, but met the issue tendered, and himself introduced evidence as to value without reference to the excepted improvements.

Defendant requested the court to order the jury to view the premises. This the court refused to do, for reasons expressed in his own words as follows: "The court doubts somewhat the matter of sending the jury out of the county and judicial district. For this reason, it being a discretionary matter with the court, the request will be refused." Section 284 of the code provides for a view by the jury of property which is the subject of litigation, or of the place in which any material fact occurred, whenever in the opinion of the court it is proper. There is a conflict of authorities upon this question. Some courts hold that a jury may not be sent beyond the territorial jurisdiction of the court, unless expressly authorized by statute. *Rockford, R. I. & St. L. R. Co. v. Coppinger,* 66 Ill. 510. But a fair interpretation of our statute convinces us that a different rule should obtain here, and that a trial court in its discretion may send the jury to view any property within the state. Section 1119 of the California penal code authorizes the superior court, in the exercise of a sound discretion, to cause a view to be taken by the jury of the place where the offense was charged to have been committed, or in which any other material fact occurred. This was held, in *People v. Busle,* 71 Cal. 602, to authorize a view in any county in the state. Section 7283 of the Ohio Rev. St. has provisions identical with our own, and it was held in *Jones v. State,* 51 Ohio St. 331, that a jury may be sent to any place where a material fact occurred, if within the jurisdiction of the state. We are of the opinion that the court had the power to send the jury to view the premises in controversy, but it does not

necessarily follow that his refusal to do so was error. The granting of such an order is by statute made discretionary, and it is only where an abuse of such discretion appears that this court will reverse a judgment. The only reason for such an order would be to enable the jury the better to understand the evidence; and in the case at bar, where the issue of fact is confined to the value of the land, we cannot see wherein the jury would have been enlightened by a view of the premises.

For the reasons given above, we recommend that *Reed v. Beardsley*, 6 Neb. 493, so far as it relates to the measure of damages, and those cases following the same rule, be overruled, and that the judgment of the district court be affirmed.

DUFFIE and GOOD, CC., concur.

By the Court: for the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.